OPINION
{¶ 1} Rachel Hackney and Gregory Dawkins are the parents of 11-year-old Gregory "Michael" Dawkins and nine-year-old Jacqueline Dawkins. For nearly five years, these two children have been involved in juvenile court proceedings.
 {¶ 2} On May 22, 1998, their grandmother, Jacqueline Dawkins, filed a dependency action. In the initial hearing after the filing of the complaint, the court issued an interim order granting custody of the children to the grandmother. The matter was before the court on August 18, 1998, for an adjudicatory hearing. The court found the children to be dependent minors and granted temporary custody to the grandmother subject to an order of protective supervision through Franklin County Children Services ("FCCS"). The court also granted Rachel Hackney, the mother ("appellant"), supervised visitation.
 {¶ 3} On March 31, 1999, FCCS filed a motion asking the court to terminate temporary custody and award legal custody to the paternal grandparents. On June 1, 1999, the magistrate rejected the motion and continued the orders of temporary custody and protective supervision.
 {¶ 4} In 2000, the following three separate custody motions were filed: (1) on April 14, 2000, the grandmother filed a motion for legal custody; (2) on May 2, 2000, FCCS filed a motion to terminate all temporary orders; and (3) on May 25, 2000, Gregory Dawkins, the father ("appellee"), filed a motion for custody.
 {¶ 5} These motions came on for hearing commencing on March 6, 2001. On July 12, 2001, the court awarded legal custody to appellant, subject to orders of visitation with the grandparents. On September 19, 2001, the magistrate rendered a decision ordering appellee to pay child support in the amount of $128.26 per child per month. In the meantime, on August 7, 2001, appellee had filed a motion for change of custody.
 {¶ 6} On February 26, 2002, after a hearing of two days, the magistrate found it was in the best interest of the children that they be placed in the legal custody of appellee. The magistrate based the decision on the work schedule of appellant, the conflict involved in the exercise of parenting time with appellee, the demeanor of the minor child, Gregory Dawkins, during an in camera interview, and appellant's "lack of regard for the court's order," as well as the children's removal from previously scheduled activities.
 {¶ 7} Appellant filed a timely objection to the magistrate's decision. On September 10, 2002, the trial judge rendered her decision overruling the objection and adopting the magistrate's decision.
 {¶ 8} Appellant appeals, asserting the following assignment of error:
The trial court's decision was not supported by the evidence presented at trial and thus inequitable as against the manifest weight of the evidence.
 {¶ 9} Appellant maintains that appellee failed to meet the standard imposed by R.C. 2151.42, which prohibits the arbitrary transfer of custody. R.C. 2151.42 provides as follows:
(A) At any hearing in which a court is asked to modify or terminate an order of disposition issued under section 2151.353 * * *, 2151.415 * * *, or 2151.417 * * * of the Revised Code, the court, in determining whether to return the child to the child's parents, shall consider whether it is in the best interest of the child.
(B) An order of disposition issued under division (A)(3) of section2151.353 * * *, division (A)(3) of section 2151.415 * * *, or section2151.417 * * * of the Revised Code granting legal custody of a child to a person is intended to be permanent in nature. A court shall not modify or terminate an order granting legal custody of a child unless it finds, based on facts that have arisen since the order was issued or that were unknown to the court at that time, that a change has occurred in the circumstances of the child or the person who was granted legal custody, and that modification or termination of the order is necessary to serve the best interest of the child.
 {¶ 10} Appellant maintains that the record does not demonstrate a change of circumstances sufficient to warrant a change of custody from her to appellee. The trial court, in its decision, responded to the issue of change of circumstances as follows:
In the instant case, the Court finds a change has occurred in the circumstances of Ms. Hackney and the children where (1) Mr. Dawkins was denied parenting time, pursuant to the Court's order, including one-half the summer and alternate holidays; (2) Ms. Dawkins [the grandmother] was denied the right of first refusal for babysitting, pursuant to the Court's order; (3) Gregory's medication was increased to control his declining behavior, while in the care of his mother; (4) Gregory's observed behavior and demeanor significantly changed from the time of the prior order of custody; (5) the tension between the parties increased, due to Ms. Hackney's behavior; and (6) the children were not enrolled in their customary activities while in Ms. Hackney's custody. * * *
 {¶ 11} As might be expected, there was substantial conflict in testimony between that of appellant and of appellee and his mother, the paternal grandmother. One could characterize the testimony of appellant as everything being fine after an initial argument concerning appellee's visitation and, with an exception of an accidental mistake, thereafter visitation had gone well, and that their son Michael had been prescribed medication which altered his previously bad behavior of lying, stealing and poor grades. Appellant claimed that Michael was doing fine now.
 {¶ 12} The testimony of the grandmother is primarily related to her being allowed to babysit the children. She said that, contrary to the court's previous order, she was not provided an opportunity to babysit the children and that she did not have means of communication with either appellant or the new babysitter. Appellant had stated that the grandmother wished to discontinue babysitting in direct conflict with the testimony of the grandmother.
 {¶ 13} Appellee testified to having a home where he lived with his fiancée where there was ample room and ability to take care of his two children without extensive use of babysitters. Appellee stated that Michael is now virtually in an inactive dazed state, something confirmed by the magistrate as a result of his contact in the in-camera hearing, which was much different than Michael used to be. In essence, appellee believes that the child is overmedicated, stating that he no longer has any interest in engaging in any of the activities, like sports, that he was engaged in previously. The trial court found that the "overmedication" appears to have been the result of an attempt to control the bad conduct in which Michael engaged after custody was initially given to appellant. The guardian ad litem of the children advises the court that he finds the court's judgment to be reasonable based on sufficient evidence.
 {¶ 14} One of the major problems was the apparent deliberate lack of communication of appellant with appellee or his mother. Phone numbers were not provided and it was difficult for them to contact her, if the need arose, as it did on at least one occasion.
 {¶ 15} The trial court found, and the evidence supports the fact, that appellant did not follow through with visitation as ordered during the summer and during one holiday. Visitation, itself, proved to be difficult according to appellee because appellant's fiancée threatened him with a knife and it was necessary to obtain police protection when he picked up the child. Appellant retaliated by seeking police protection against appellee. Fortunately, by agreement of the parties, police protection was eliminated after a period of time.
 {¶ 16} In summary, the trial court is the one who judges the credibility of the witnesses. The trial court found the testimony of appellee and his mother (the paternal grandmother) to be credible and rejected the testimony of appellant as not being credible. Consequently, the trial court found that there was sufficient evidence to find it to be in the best interest of the children to amend the custody order to place custody with appellee.
 {¶ 17} A reviewing court is guided by the presumption that the findings of the trial court are correct since the trial court is best able to view the witnesses and observe their demeanor, gestures and voice reflections and use these observations in weighing the credibility of the testimony. In re Jane Doe (1991), 57 Ohio St.3d 135. In this case, observation of the witnesses by the magistrate, as reviewed by the trial court, is important. It is in the best interest of a child to have a custodial parent who cooperates with a non-custodial parent in matters like visitation, medication, school activities, etc. In this case, the trial court was justified in finding that appellant made it difficult for the children by her negative attitude toward appellee and the paternal grandmother, resulting in harm to the children. Appellant did not even inform them of the nature of the medication, the dosage, or other important factors bearing on proper child care. An objective observer, the magistrate, found that the medication had a negative affect upon Michael as compared to the time prior to the use of increased medication.
 {¶ 18} The trial court did not abuse its discretion in reaching its decision. An abuse of discretion connotes more than an error of law or judgment. It implies that the court's attitude is unreasonable, arbitrary or unconscionable. Blakemore v. Blakemore (1983),5 Ohio St.3d 217. The evidence found credible supports the findings of the magistrate and the trial court, which in its totality is sufficient to support the reasonableness of the trial court's decision to change custody from appellant to appellee as being in the best interest of the children.
 {¶ 19} Appellant's assignment of error is overruled, and the judgment of the trial court is affirmed.
Judgment affirmed.
PETREE, P.J., and BOWMAN, J., concur.
McCORMAC, J., retired of the Tenth Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.